**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MARIA GUADALUPE AGUILERA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 25-CV-0229-CVE-CDL** |
| | ) | |
| **CAPITAL ONE, N.A. JACK JOHNSON,** | ) | |
| **KRISTINA NEVEL, JOANNE TUCKER,** | ) | |
| **SUZANNE DROTMAN, and JUDITH** | ) | |
| **WILLIAMS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: Defendant Capital One Auto Finance's Motion to Dismiss and Brief in Support (Dkt. # 11); Defendants Jack Johnson, Kristina Nevel, and Judith Williams' Motion to Dismiss and Brief in Support (Dkt. # 29); and Defendants Suzanne Drotman and Joanne Tuckers' Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support (Dkt. # 31). Plaintiff Maria Guadalupe Aguilera, proceeding pro se, has filed a response (Dkt. # 27) in which she asks the Court to deny defendants' motion to dismiss or allow her to file an amended complaint.

This is an employment discrimination case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (PDA), and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA). Aguilera also alleges state law claims under theories of wrongful termination and negligent infliction of emotional distress. Defendants argue that Aguilera has failed to state any claim upon which relief can be granted, and defendants Suzanne Drotman and Joanne Tucker also argue that the Court lacks personal jurisdiction over them. Dkt. ## 11, 29, 31. Aguilera responds that she has set forth plausible

claims of employment discrimination, retaliation, and wrongful termination, and plaintiff asserts that she has documentation to support the harm she endured. Dkt. #27, at 1.

## I.

Aguilera worked for Capital One, N.A. (Capital One) in Tulsa, Oklahoma for 14 years before her termination on August 22, 2024. Dkt. # 2, at 2; Dkt. # 11-1, at 2. Aguilera alleges that defendants committed discriminatory and retaliatory acts against her throughout her tenure with Capital One. Dkt. # 2, at 2-3. These purported discriminatory and retaliatory acts include: terminating her employment, making racially insensitive comments, placing her on a Performance Improvement Plan (PIP) "while [she was] in her third trimester," and repeatedly misusing performance tools to justify her unlawful termination. Id. at 3-5. Aguilera further alleges that Capital One retaliated against her for filing an Equal Employment Opportunity Commission (EEOC) charge by increasing her performance target for tracking call data from 85% to 90%, conducting a biased Quality Assurance (QA) audit, and ultimately "orchestrat[ing] [plaintiff's] termination based on this QA." Id. at 3-4. Aguilera claims that when she asked her manager, Kristina Nevel, whether the performance metric had changed, Nevel replied that Aguilera was "the only one [who] noticed." Id. at 22.  Aguilera's average performance score for the "Tracked vs. Taken" metric was 89.20%, which fell short of the new 90% target and served as the basis for her placement on the PIP. Id. at 3, 35. Aguilera also asserts that Spanish-speaking customers "routinely faced difficulty escalating calls" and that the "Office of the President only allowed Spanish customers to receive delayed callbacks, while English-speaking customers received immediate assistance." Id. at 3. Aguilera alleges that she "filed an internal complaint regarding the disparate treatment of Spanish-speaking customers, but no

corrective action was taken." Id. Following these events, Aguilera claims that she experienced an [e]motional [f]allout" and "suffered a suicide attempt due to workplace stress." Id. at 4.

In May 2022, Aguilera filed a charge of discrimination with the EEOC in which she alleged that Capital One discriminated against her based on her race and created a hostile work environment. Id. at 3. In July 2023, Aguilera received a right to sue letter from the EEOC. Id. Aguilera filed a second charge with the EEOC and received a right to sue letter in April 2025. Id. at 4. Aguilera did not attach a copy of either EEOC charge to her complaint. However, Capital One attached the second EEOC charge to its motion to dismiss. Dkt. # 11-1. The charge is dated March 12, 2025, and within the charge Aguilera cites discrimination based on "National Origin, Race, and Retaliation." Id.

On May 7, 2025, Aguilera filed this case alleging employment discrimination and tort claims against Capital One and several employees of Capital One. Dkt. # 2. In the complaint, Aguilera does not provide dates regarding her time on the PIP or her maternity leave. However, she states in her response to the motion to dismiss that she was placed on the PIP in August 2023 when she was 31 weeks pregnant, "despite having no prior performance coaching or history of poor metrics." Dkt. # 27, at 2. Aguilera alleges that she suffered a miscarriage while she was on FMLA leave and, upon returning to work in January 2024, she "was told she was still on the same PIP, which had been verbally extended during a Zoom meeting." Id.

On October 11, 2024, Aguilera sent a "cease and desist" letter to Capital One and she has attached a copy of the letter to her complaint. Dkt # 2, at 9-15. In the letter, Aguilera asserts that she was placed on the PIP while on FMLA leave, and Capital One made her return to work during her FMLA leave to make her sign the PIP. Id. at 11. She also claims that Capital One impeded the approval of her FMLA request by claiming that her pregnancy "was not high-risk enough." Id. at 23.

3

Aguilera claims that Capital One continued to retaliate against her after she returned from FMLA leave. Id. at 24.

On May 7, 2005, Aguilera filed this case alleging claims of discrimination under Title VII (Count I), retaliation under Title VII and the FMLA (Count II), pregnancy discrimination (Count III), negligent infliction of emotional distress (Count IV), and wrongful termination (Count V). Id. at 5. The complaint does not specifically identify which claims are asserted against each defendant. Plaintiff seeks over $17 million in damages, and she also demands that Capital One fire Johnson, Nevel, and Williams. Id. at 6.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions. Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy

4

Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935F.2d 1106, 1109-10 (10th Cir. 1991)

In addition, pro se pleadings must be liberally construed. See Haines v. Kerner, 404 U.S. 519, 520 (1972). For purposes of reviewing a complaint for failure to state a claim, all allegations in the complaint must be presumed true and construed in a light most favorable to plaintiff. Hall, 935 F.2d at 1109; Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988). Pro se complaints are held to less stringent standards than pleadings drafted by lawyers, and the court must construe them liberally. Haines, 404 U.S. at 520. Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations. Hall, 935 F.2d at 1110. Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil Procedure." Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir.1994).

## III.

Defendants move to dismiss all claims for failure to state a claim upon which relief can be granted. Dkt. # 11, at 6; Dkt. # 29, at 1; Dkt. # 31, at 12. Defendants Suzanne Drotman and Joanne Tucker additionally argue that the Court lacks personal jurisdiction over them. Dkt. # 31, at 1. Aguilera responds that she has set forth "plausible, well-supported claims," and she asserts that she has medical documentation to support the emotional and physical harm she endured. Dkt. # 27, at

1.[1]  Aguilera contends that she has adequately alleged the "who, what, when, and where of her claims," and she has put defendants on notice of the alleged discriminatory conduct giving rise to her claims.  Id. at 3.

## A.    Title VII Claims - Individual Employees

The individual defendants argue that Aguilera has failed to state a claim for race discrimination, pregnancy discrimination, and retaliation under Title VII, because Title VII does not impose liability on individual employees. Dkt. # 29, at 4; Dkt. # 31, at 12. Aguilera does not respond to the individual defendants' argument that Title VII does not provide a basis to impose liability on individual employees or supervisors.

The Court agrees with the individual defendants that Aguilera cannot bring Title VII claims for discrimination or retaliation against individual employees or supervisors. "Under long-standing [Tenth Circuit] precedent, supervisors and other employees may not be held personally liable under Title VII." Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1083 n.1 (10th Cir. 2007). In other words, the Tenth Circuit has interpreted Title VII liability to apply to the employer only, and not to individual employees. "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." Haynes v. Williams, 88 F.3d 898, 899 (10th Cir. 1996) (emphasis in original). Every other circuit court of appeals to consider this issue has determined that individual employees may not be held liable under Title VII. Fantini v. Salem

---

[1]    Aguilera has filed notices alleging that Capital One has continued to discriminate against her and her husband after she filed this lawsuit.  Dkt. ## 9, 32.  Defendants ask the Court to strike Aguilera's notices, because the allegations in the notices are false and occurred outside the time period relevant to plaintiff's claims.  Dkt. # 33.  The Court finds that the allegations raised in Aguilera's notices occurred after the case was filed and are irrelevant to her claims of discrimination.  However, the Court finds no basis to strike Aguilera's notices, and defendants' motion (Dkt. # 33) is denied.

State College, 557 F.3d 22 (1st Cir. 2009); Wathen v. General Elec. Co., 115 F.3d 400 (6th Cir. 1997); Williams v. Banning, 72 F.3d 552 (7th Cir. 1995); Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103 (8th Cir. 1998); Miller v. Maxwell's Int'l Inc., 991 F. 2d 583 (9th Cir. 1993); Busby v. City of Orlando, 931 F.2d 764 (11th Cir. 1991).

Individual employees or supervisors are not subject to suit under Title VII. Further, the PDA does not create a separate cause of action for pregnancy discrimination but merely "makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." Young v. United Parcel Serv., Inc., 575 U.S. 206, 210 (2015). Therefore, plaintiff's Title VII claims against the individual defendants for race discrimination, pregnancy discrimination, and Title VII retaliation should be dismissed for failure to state a claim upon which relief can be granted.

**B.      Title VII Race Discrimination (Count I)**

Capital One argues that Aguilera has failed to a state claim under Title VII because Aguilera did not plausibly plead any connection between her race and termination, or any other adverse employment action. Dkt. # 11, at 8-11. Aguilera responds that her complaint states the "who, what, when, and where of her claims," and she invokes the more lenient pleading standards applicable to pro se litigants. Dkt. # 27, at 3.

Title VII prohibits discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove a Title VII violation through either direct or circumstantial evidence. See Furr v. AT & T Techs., Inc., 824 F.2d 1537, 1548-49 (10th Cir. 1987). If plaintiff proceeds by means of circumstantial evidence to prove her

claims, the Court must apply the <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973),

burden-shifting analysis in reviewing plaintiff's claims. Under this framework:

> [T]he plaintiff must carry the initial burden under the statute of establishing a prima facie case of [discrimination or retaliation]. Once the plaintiff has established a prima facie case, the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

<u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d 1220, 1226 (10th Cir. 2000) (internal quotation

marks and citations omitted).

At the pleading stage, a plaintiff is not required to set forth a prima facie case of

discrimination, but the plaintiff must allege sufficient, non-conclusory facts that could support a

plausible inference of workplace discrimination. <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1193

(10th Cir. 2012). However, courts may use the elements of a prima facie case of discrimination to

help determine whether the plaintiff has alleged a plausible claim of discrimination. <u>Id.</u> To establish

a claim of racial discrimination, a plaintiff would be required to show that: "(1) 'she is a member of

a protected class,' (2) 'she suffered an adverse employment action,' and (3) 'the challenged action

occurred under circumstances giving rise to an inference of discrimination.'" <u>McNellis v. Douglas</u>

<u>Cnty. School Dist.</u>, 116 F.4th 1122, 1139 (10th Cir. 2024) (quoting <u>Bennett v. Windstream</u>

<u>Commc'ns., Inc.</u>, 792 F.3d 1261, 1266 (10th Cir. 2015)). "One method by which a plaintiff can

demonstrate an inference of discrimination is to show that the employer treated similarly situated

employees more favorably." <u>Luster v. Vilsack</u>, 667 F.3d 1089, 1095 (10th Cir. 2011). To survive a

motion to dismiss, '[a] complaint raising a claim of discrimination does not need to conclusively

establish the prima facie case of discrimination, but it must contain more than '[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements.'" Bekkem v. Wilkie, 915 F.3d 1258, 1274 (10th Cir. 2019) (quoting Iqbal, 556 U.S. at 678).

Further, a prerequisite to filing a complaint under Title VII is the filing of a timely charge of discrimination with the appropriate governmental agency. 42 U.S.C. § 2000e-5(e)(1). In "deferral states" like Oklahoma, where a state agency has authority to investigate employment discrimination, the statute requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment discrimination. See, e.g., id.; Ford v. Jackson Nat'l Life Ins. Co., 45 F.4th 1202, 1228 (10th Cir. 2022); Jensen v. W. Jordan City, 968 F.3d 1187, 1203 (10th Cir. 2020). Plaintiff filed her second EEOC charge on March 12, 2025, and received her right to sue letter on April 3, 2025. Dkt. # 11-1, at 2-3; Dkt # 2, at 26-29. Based on the 300-day filing requirement under Title VII, plaintiff may pursue claims based only on alleged discriminatory acts that occurred on or after May 16, 2024.

Capital One argues that Aguilera's claims fail because she has not sufficiently plead that her employment was terminated under circumstances giving rise to an inference of unlawful discrimination. Dkt # 11, at 8. Aguilera responds that she has adequately alleged Title VII claims against Capital One, because she identifies "protected activity (EEOC charge, internal complaint)[,] . . . adverse actions (PIP, termination, denial of accommodation)[,]" and "a timeline connecting the two." Dkt. # 27, at 3. Aguilera's complaint lacks factual allegations concerning specific events that occurred within the applicable 300-day limitations period. Aguilera's placement on the PIP spanned from August 2023 to April 2024, falling outside of the relevant window of acts after May 16, 2024. See id. at 2-3. Aguilera asserts that Spanish-speaking customers received delayed callbacks, denial of escalation, and no corrective action. Dkt. # 2, at 3. However, such claims are general and lack

9

concrete details such as dates, specific incidents, or how the actions adversely affected the terms and conditions of Aguilera's employment. Further, Aguilera alleges that the company engaged in ongoing discrimination and retaliation, ignored racially insensitive comments from leadership, and repeatedly misused performance tools to justify her termination. Id. at 4-5. However, she does not allege any non-conclusory facts showing that performance tools were applied differently to her based on race or that similarly situated employees outside her protected class were treated more favorably.

The Court is mindful of Aguilera's pro se status and construes her pleadings liberally, but even pro se complaints must contain sufficient factual matter to state a claim for relief. These conclusory allegations do not give rise to an inference of discrimination even under a lenient pleading standard. Aguilera fails to state a claim under Title VII for racial discrimination, and her claim should be dismissed, with leave to amend to sufficiently state a claim for relief.

**C.    Title VII/PDA Pregnancy Discrimination (Count III)**

Capital One also seeks to dismiss Aguilera's pregnancy-discrimination claim or any sex-discrimination claim, arguing that Aguilera "failed to exhaust her administrative remedies with respect to pregnancy discrimination (and sex discrimination in general)." Dkt. # 11, at 13. In addition, Capital One attaches Aguilera's March 13, 2025, EEOC charge, in which she alleges discrimination based on "National Origin, Race, and Retaliation." 11-1, at 2. Aguilera responds that she "had no legal duty to predict she would face pregnancy-related retaliation when she filed her first [EEOC] charge" and that "her second charge preserved her ability to raise it." Dkt. # 27, at 4.

Defendant has challenged whether Aguilera timely exhausted her administrative remedies before filing a claim of sex or pregnancy discrimination. Individuals pursuing a claim under Title VII are required to first file administrative charges with the EEOC, or, if applicable, its state

counterpart. 42 U.S.C. § 2000e- 5(e)). "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." MacKenzie v. City & Cnty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005). The charge "must contain facts concerning the discriminatory and retaliatory actions underlying each claim." Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). "[E]ach discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003). "[W]here discrete incidents of discrimination occur after an employee files an initial EEOC charge, the employee must file an additional or amended charge with the EEOC to satisfy the exhaustion requirement as to discrete incidents occurring after the initial charge." Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1181 (10th Cir. 2018). "[U]nexhausted claims involving discrete employment actions are no longer viable." Martinez, 347 F.3d at 1210. Therefore, a plaintiff "may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1194 (10th Cir. 2004) (internal quotation marks omitted).

Aguilera's EEOC charge filed on March 13, 2025 did not allege pregnancy or sex discrimination. Dkt. # 11-1, at 2-3. As such, the Court cannot reasonably expect such claims to fall within the scope of the EEOC's resulting investigation. Aguilera argues that she was not legally required to anticipate pregnancy-related retaliation and invokes a "continuing pattern" theory. Dkt. # 27, at 4. However, such an argument is foreclosed by the Tenth Circuit's clear rejection of the continuing violation doctrine in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). See Martinez, 347 F.3d at 1211 ("[The Tenth Circuit's] decisions have unambiguously recognized

11

Morgan as rejecting application of the 'continuing violation' theory."). Plaintiff cannot revive unexhausted allegations by characterizing them as part of a continuing pattern of discrimination.

Aguilera's pregnancy discrimination claim relies on factual allegations relating to her pregnancy in 2023, and she alleges that defendant discriminated against her by placing her on a PIP in August 2023, when she was approximately 31 weeks pregnant. Dkt. # 2, at 3-4; Dkt. # 27, at 2. Liberally construing the complaint, the most recent alleged discriminatory act related to her pregnancy occurred in April 2024, when she completed the PIP. See Dkt. # 27, at 3. However, all the events still occurred prior to May 16, 2024, and Aguilera has not alleged that any discrete act of pregnancy discrimination occurred at least 300 days prior to the filing of her second EEOC charge. Aguilera failed to timely exhaust her administrative remedies as required under Title VII and the PDA. Granting leave to amend the complaint would be futile as to Aguilera's pregnancy and sex discrimination claims, and these claims are dismissed without leave to amend.

**D.     Title VII and FMLA Retaliation (Count II)**

Aguilera alleges that Capital One unlawfully retaliated against her in violation of Title VII and the FMLA by placing her on a PIP and ultimately terminating her employment in response to her protected activities, including filing an EEOC charge and taking FMLA leave. Dkt # 2, at 3-4. Capital One argues that Aguilera's retaliation claims should be dismissed because she did not plead any connection between her termination (or any other adverse employment action) and her engaging in any protected activity. Dkt. # 11, at 9.

To establish a prima facie case of retaliation under Title VII, a plaintiff must allege that (1) she engaged in protected opposition to discrimination; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the opposition and the adverse

action. Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004). Further, the FMLA prohibits an employer from discriminating against an employee for opposing a practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). Like Title VII claims, FMLA retaliation claims are subject to the McDonnell Douglas burden-shifting framework. Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007). To make out a prima facie FMLA retaliation claim, a plaintiff must allege that "(1) she engaged in a protected activity; (2) [her employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006). The Tenth Circuit characterizes "the showing required to satisfy the third prong under a retaliation theory to be a showing of bad intent or 'retaliatory motive' on the part of the employer. Campbell, 478 F.3d at 1287 (quoting Metzler, 464 F.3d at 1171). When ruling on a motion to dismiss, the elements of a prima facie retaliation claim merely serve as a guide to evaluate whether a plaintiff has pled enough facts to state a plausible retaliation claim, and Aguilera's Title VII and FMLA retaliation claims will not be subject to dismissal solely based on whether she has alleged each of the elements of a prima facie case.

### i. Termination

Capital One challenges only whether Aguilera's allegations support a causal connection between the protected activity (filing the first EEOC charge or taking FMLA leave) and the materially adverse action (termination). Dkt # 11, at 9. Aguilera filed her initial EEOC charge in May 2022, took FMLA leave beginning in late 2023, returned from leave in January 2024, and was terminated on August 22, 2024. Dkt # 2, at 3-4; Dkt # 27, at 3. Aguilera's termination occurred more than two years after she filed her initial EEOC charge and approximately seven months after she

returned from FMLA leave. These time intervals, standing alone, are insufficient to establish the necessary causal link. See Metzler, 464 F.3d at 1171 (noting that a period of three months between the protected activity and the adverse action is, by itself, insufficient to establish causation). Aguilera does not allege any additional facts that would support a retaliatory motive. Her complaint fails to plead any facts linking her EEOC charge or FMLA leave to her eventual termination beyond the mere fact that her employment was eventually terminated. Instead, Aguilera alleges that Capital One orchestrated her termination based on a "biased [quality assessment]." Dkt # 2, at 4. Aguilera pleads no facts suggesting that the quality assessment process was influenced by her prior complaints or her FMLA leave. Aguilera fails to sufficiently allege a causal connection between her termination and protected activity as required to state a claim for retaliation under Title VII or the FMLA.

ii.    **PIP**

Aguilera also includes her placement on the PIP as part of Capital One's "pattern of escalating retaliation." Dkt. # 2, at 3. Capital One argues generally that Aguilera has not plead any facts suggesting that there was a connection between any adverse employment action and her engaging in any protected activity. Dkt. # 11, at 9. However, Capital One does not specifically address Aguilera's placement on the PIP as an adverse employment action. While Aguilera does not expressly argue that her placement on the PIP constitutes an adverse employment action, the Court infers that Aguilera intended this action to fulfill the second element of her prima facie case of retaliation. The second element of a prima facie case of FMLA retaliation is "an action that a reasonable employee would have found materially adverse." Metzler, 464 F.3d at 1171. "For a retaliation claim under Title VII, an adverse employment action is something that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Lincoln v.

14

<u>Maketa</u>, 880 F.3d 533, 540 (10th Cir. 2018) (quoting <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006)). To fulfill the second element, plaintiff must show that the complained of actions "brought about some 'disadvantageous' change in an employment term or condition." <u>Muldrow v. City of St. Louis, Missouri</u>, 601 U.S. 346, 354 (2024). Aguilera does not have to show "that the harm incurred was 'significant[,]'" and the phrase "employment term or condition" encompasses more than economic or tangible changes to the plaintiff's employment. <u>Id.</u> at 354-55. However, Aguilera must still "show some harm respecting an identifiable term or condition of employment." <u>Id.</u>

The Court finds that Aguilera's placement on the PIP qualifies as an adverse employment action. Aguilera alleges that she was placed on the PIP in August 2023 while she was "30 plus weeks pregnant" and actively on FMLA leave. Dkt. # 2, at 11. Further, she claims that she was required to interrupt her protected medical leave to sign the PIP and that the plan remained in effect upon her return from leave in January 2024. <u>Id.</u> Aguilera also includes documentation conveying that the PIP included weekly "10/10s" with her manager, which were recurring performance-related meetings used to monitor her performance. <u>Id.</u> at 36. She alleges that the PIP altered her evaluative process, subjected her to heightened scrutiny, and required ongoing performance meetings that were not part of her prior employment experience. These allegations, taken as true, suggest a disadvantageous change to the terms of her employment. Accordingly, the Court finds that the PIP constitutes an adverse action sufficient to satisfy the second element of a retaliation claim under Title VII and the FMLA.  As to the third element, the Court finds that Aguilera sufficiently pleads a connection between her FMLA leave and Capital One's imposition of the PIP. While the May 2022 EEOC charge filing is too remote to establish causation, the close temporal proximity between Aguilera's

protected FMLA leave and her placement on the PIP supports an inference of retaliatory motive. Aguilera alleges that Capital One imposed the PIP in August 2023, during which time she was at least 30 weeks pregnant and actively on leave. Dkt. # 2, at 11; see also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) ("A retaliatory motive may be inferred when an adverse action closely follows protected activity.").

Aguilera further alleges that she had no prior coaching or discipline history, that Capital One impeded the approval of her FMLA request by claiming her pregnancy was not "high-risk enough," and that she suffered a miscarriage. Dkt # 2, 23. Although other employees also seemingly faced heightened performance metrics, the timing, individualized imposition of the PIP, and interference with leave approval together raise a plausible inference of causation sufficient to satisfy the third element of a FMLA retaliation claim. Further, Aguilera alleges that she was "the only one [who] noticed" the increased performance metric from 85% to 90%, which may suggest that the change was selectively applied to her. Id. While the Court finds that Aguilera's Title VII retaliation claim fails for lack of temporal proximity to the 2022 EEOC charge, her allegations regarding the PIP are adequately tied to her FMLA leave to state a plausible claim for retaliation under the FMLA.

**E.     Negligent Infliction of Emotional Distress (Count IV)**

Aguilera claims that she suffered an "[e]motional [f]allout," and she alleges that all defendants are liable for negligent infliction of emotional distress. Dkt. # 2, at 4-5. In addition to asserting emotional harm, Aguilera asserts accompanying "physical harm due to the stress and retaliation," including "a suicide attempt due to workplace stress." Dkt. # 27, at 4; Dkt # 2, at 4. Defendants ask the Court to dismiss Aguilera's negligence claim because such a claim is preempted by the Oklahoma Worker's Compensation Act, OKLA. STAT. tit. 85, § 1 (OWCA), and the Oklahoma

16

Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 et seq. (OADA). Dkt # 11, at 13; Dkt # 29, at 6; Dkt. # 31, at 12. Defendants argue that to the extent plaintiff's negligence claim is based "physical injury arising out of her performance improvement plan, her termination, or other circumstances related to her employment," the OWCA and OADA provide exclusive remedies for such allegations. Dkt. # 11, at 15; Dkt. # 29, at 8-9; Dkt. # 31, at 12.

The Oklahoma Supreme Court does not recognize negligent infliction of emotional distress as an independent tort, but a plaintiff may obtain emotional distress damages as part of a standard negligence claim. Ridings v. Maze, 414 P.3d 835, 837 (Okla. 2018). A plaintiff must establish that the defendant had a duty to protect plaintiff from injury, that the defendant failed in that duty, and that plaintiff suffered an injury from the defendant's failure. Id. at 838. Here, Aguilera has not alleged facts suggesting that defendants had a legal duty to protect her, that they failed to perform that duty, or that an injury to plaintiff resulted from the failure. The Court also notes that anti-discrimination laws protect against intentional discrimination, and permitting a negligence claim for alleged unintentional violations of anti-discrimination laws would undermine existing anti-discrimination laws. See Backus v. I.Q. Data Int'l, Inc., 2021 WL 828477, *4 (N.D. Okla. Mar. 4, 2021) (finding that the Fair Housing Act could not be used to supply a tort duty when the statute required intentional discrimination to impose liability against a defendant); Newman v. First Liberty Bank, 2019 WL 11638972, at *3 (W.D. Okla. Jan. 30, 2019) (rejecting plaintiff's attempt to craft a tort duty based on a defendant's alleged failure to comply with anti-discrimination laws). Therefore, plaintiff's claim of negligent infliction of emotional distress has no basis under Oklahoma law, and this claim should be dismissed for failure to state a claim upon which relief can be granted.

17

F.     **Wrongful termination (Count V)**

Aguilera also asserts a claim for wrongful termination against all defendants. Dkt # 2, at 5. Defendants argue that Aguilera's claim for wrongful termination in violation of an Oklahoma public policy should be dismissed because such a claim is "preempted by the OADA." Dkt. # 11, at 18; Dkt # 29, at 11; Dkt. # 31, at 12. Additionally, the individual defendants argue that individual employees cannot be liable for wrongful termination. Dkt # 29, at 10; Dkt. # 31, at 12. In response to Capital One's motion to dismiss, Aguilera claims that her wrongful termination claim is "based on federal rights." Dkt. # 27, at 4.

Oklahoma courts previously recognized a common law tort claim for wrongful termination in violation of an Oklahoma public policy. See Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989). However, in 2011, the Oklahoma legislature amended the OADA, to state that "[t]his act provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of race, color, national origin, sex, religion, creed, age, disability or genetic information." At the same time, the Oklahoma legislature enacted a separate statute stating that "[a] cause of action for employment-based discrimination is hereby created and any common law remedies are hereby abolished." OKLA. STAT. tit. 25, § 1350. In MacDonald v. Corporate Integris Health, 321 P.3d 980 (Okla. 2014), the Oklahoma Supreme Court considered the effects of §§ 1101 and 1350 when construed together:

> The Legislature has declared that the OADA "provides the *exclusive remedies* within this state . . . for individuals alleging discrimination in employment on the basis of race, color, national origin, sex, religion, creed, age, disability or genetic information." OKLA. STAT. tit. 25, § 1101. To leave no doubt about the intended effect of this declaration of purpose, the Legislature further expressly provided that "any common law remedies are hereby abolished." OKLA. STAT. tit. 25, § 1350(A). Among the exclusive remedies provided in the OADA is a "cause of action for

18

employment-based discrimination." Id. Any victim of discrimination based on race, color, religion, sex, national origin, age, disability, or genetic information can pursue such cause of action upon exhausting the administrative remedies provided in the OADA. OKLA. STAT. tit. 25, § 1350.

Id. at 984. The Court finds that Oklahoma has abolished a common law tort for wrongful termination in violation of an Oklahoma public policy. Therefore, the wrongful termination claim should be dismissed for failure to state a claim without leave to include this claim in an amended complaint.

## IV.

The Court finds that Aguilera has alleged sufficient facts to support a claim for FMLA retaliation. However, Aguilera fails to state any non-conclusory factual allegations occurring within the relevant limitations period in support of her racial discrimination (Count I) and Title VII retaliation (Count II) claims. Additionally, the Court finds that Aguilera may not amend her claim for pregnancy discrimination (Count III), as she failed to exhaust her administrative remedies. Aguilera is likewise precluded from amending her claims for wrongful termination (Count IV) and negligent infliction of emotional distress (Count V), as such claims have no cognizable basis under Oklahoma law.  The Court will grant Aguilera leave to amend her complaint to correct the pleading deficiencies outlined above as to Counts I and II only. See Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 806 (10th Cir. 1999) ("Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give [her] an opportunity to amend"). If Aguilera does not amend within the time allowed, the case will be dismissed without prejudice.

19

**IT IS THEREFORE ORDERED** that the Motion to Dismiss of Defendants Jack Johnson, Kristina Nevel, and Judith Williams (Dkt. # 29) is **granted**. Jack Johnson, Kristina Nevel, Judith Williams, Suzanne Drotman, and Joanne Tucker are terminated as defendants.

**IT IS FURTHER ORDERED** that Capital One Auto Finance's Motion to Dismiss and Brief in Support (Dkt. # 11) is **granted in part** and **denied in part**: the motion is denied as to plaintiff's FMLA retaliation claim (Count II), but the motion is granted in all other respects. Plaintiff will be granted leave to file an amended complaint re-asserting her Title VII discrimination and retaliation claims (Counts I and II), but the remaining claims (Counts III, IV, and V) are dismissed without leave to amend.

**IT IS FURTHER ORDERED** that Defendants Suzanne Drotman and Joanne Tuckers' Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support (Dkt. # 31) is **moot**.

**IT IS FURTHER ORDERED** that Defendant Capital One, N.A.'s Motion to Strike Plaintiff's Improper "Notice" Filings (Dkt. # 33) is **denied**.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint re-asserting her Title VII racial discrimination and retaliation claims only no later than **November 25, 2025**.

**DATED** this 4th day of November, 2025.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE